UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| LAMAR OCI SOUTH CORPORATION, and LAMAR TENNESSEE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | 3:21-CV-00226-DCLC |
| vs. | ) ) ) | |
| TENNESSEE DEPARTMENT OF TRANSPORTATION, and CLAY BRIGHT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF TRANSPORTATION, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Tennessee Department of Transportation ("TDOT") and its Commissioner, Clay Bright ("Commissioner Bright"), have filed a Motion for Judgment on the Pleadings [Doc. 31], arguing the case should be dismissed because they are immune from any action for money damages and because Plaintiffs lack standing to bring their other claims for declaratory and injunctive relief. Plaintiffs have responded. The motion is now ripe for resolution.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In 1965, Congress enacted the Federal Highway Beautification Act ("HBA"), 23 U.S.C. § 131, to "promote the safety and recreational value of public travel, and to preserve natural beauty." *Id.* "The HBA conditions ten percent of a State's federal highway funds on the State's maintaining 'effective control' of signs within 660 feet of an interstate or primary highway…." *Thomas v. Bright*, 937 F.3d 721, 725 (6th Cir. 2019), *abrogated by City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022) (quoting 23 U.S.C. § 131(b)).  To comply with the

requirements of the HBA, the Tennessee legislature passed the Tennessee Billboard Regulation and Control Act of 1972 (the "Billboard Act"), Tenn. Code Ann. § 54-21-101 *et seq.*, to regulate outdoor advertising in Tennessee [Doc. 29, ¶ 12]. The Billboard Act required outdoor advertisers to pay annual permit fees to TDOT for each outdoor advertisement [Doc. 29, ¶ 13]. Plaintiffs, outdoor advertisers Lamar OCI South Corporation and Lamar Tennessee, LLC (collectively, "Lamar"), maintain billboards in Tennessee and paid the annual permit fees to TDOT each year until November 19, 2019, when TDOT stopped collecting the fees [Doc. 29, ¶¶ 11, 13, 23]. Lamar filed this action against TDOT and Commissioner Bright alleging all the fees it paid were collected under an unconstitutional Act and should be reimbursed.

Lamar relies on *Thomas v. Bright,* the recent Sixth Circuit decision that addressed the constitutionality of the Billboard Act. 937 F.3d 721 (6th Cir. 2019), *abrogated by City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022). In 2006, Thomas, an owner of over 30 billboards in Tennessee, sought a permit to construct a billboard on a vacant lot in west Tennessee, but TDOT denied the permit. *Id*. at 726. After Thomas constructed the billboard anyway, TDOT sued him in state court, claiming that he was in violation of the Billboard Act. *Id*. A protracted litigation followed [Doc. 29, ¶ 16, n. 2]. *Id*.[1] In 2013, as the state litigation remained pending, Thomas sued TDOT in federal court alleging the Billboard Act, as applied to his vacant lot sign, was an unconstitutional restriction of free speech in violation of the First Amendment to

---

[1] For a full discussion of the state court litigation see *Thomas v. Bright*, 937 F.3d at 726-27 (outlining a brief history of the state lawsuit between Thomas and TDOT). Thomas used the vacant lot billboard for commercial advertising until 2012, and never obtained a state permit from TDOT. *Id*. In 2012, Thomas displayed a non-commercial message on the vacant lot billboard in support of the 2012 United States Summer Olympic Team. *Id*. Meanwhile, TDOT was still fighting to have Thomas's billboard removed. *Id*. On remand, the state trial court found the non-commercial advertisement was exempt from the Billboard Act, but the Tennessee Court of Appeals reversed, stating that Thomas was not allowed to erect a billboard without a permit "[r]egardless of what message is displayed . . . ." *Id*.

2

the United States Constitution. *See Thomas v. Schroer*, 248 F. Supp. 3d 868, 871 (W.D. Tenn. 2017). The district court applied strict scrutiny to the Billboard Act and found that Tennessee had not shown a compelling state interest in restricting Thomas's sign usage. Accordingly, the court found the Billboard Act unconstitutional as applied to Thomas' vacant lot billboard and enjoined TDOT from enforcing the Billboard Act as to that particular sign. *Id*. at 894-95. After the district court issued its opinion, Thomas requested the court enjoin TDOT from enforcing the Billboard Act against all signs, or at least all of *his* signs. But the district court declined to expand the injunction, finding that Thomas had not alleged the Billboard Act was "unconstitutional in all its applications, or even unconstitutional as to a substantial number of applications." *Thomas v. Schroer*, No. 13-cv-02987, 2017 WL 6489144, at *7 (W.D. Tenn. Sept. 20, 2017).

On September 11, 2019, the Sixth Circuit affirmed the district court's ruling. *Thomas*, 937 F.3d at 738. It found that Billboard Act's "on-premises exception scheme [to be] a content-based regulation of … free speech." *Id.* at 729. It noted that "[t]he Billboard Act's on-premises exception allows a property owner to avoid the permitting process and proceed to post a sign without any permit, so long as the sign is 'advertising activities conducted on the property on which [the sign is] located.'" *Id.* (citing Tenn. Code Ann. § 54-21-103(3)). The court deemed this exception scheme to be content based because TDOT had to read the message on the sign to determine whether it violated the Billboard Act. *Id.* Applying strict scrutiny review, the court found the Billboard Act was "not narrowly tailored to further a compelling interest[,]" and held the Act was an "unconstitutional restriction on non-commercial speech." *Id.* at 733, 737. On November 19, 2019, TDOT stopped collecting fees under the Billboard Act [Doc. 22, ¶ 22]. The Tennessee legislature eventually repealed the Billboard Act and replaced it with the Outdoor Advertising Control Act of 2020, Tenn. Code Ann. § 54-21-113 (2020) [Doc. 29, ¶¶ 23, 24].

3

Lamar requested TDOT reimburse the annual permit fees Lamar had paid under the Billboard Act or to "otherwise prospectively [credit the fees] to the companies promptly." [Doc. 29, ¶ 27]. Lamar filed this lawsuit after TDOT refused [*Id.*].

Lamar alleges TDOT and Commissioner Bright violated Lamar's rights under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Article I, Section 8 of the Tennessee Constitution when TDOT collected fees from Lamar "under the color of an unconstitutional Act" and refused to reimburse or credit those fees [Doc. 29, ¶¶ 30-47]. Lamar seeks a "declaratory judgment by this Court ordering Defendants to reimburse, restore, or prospectively credit [Lamar's] fees unlawfully collected under apparent authority of a law which has been adjudged to be unconstitutional in its entirety." [Doc. 29, ¶ 50]. Lamar also seeks "extra ordinary relief" in the form of a Court order requiring TDOT to provide a complete accounting of all fees paid by Lamar under the Billboard Act [Doc. 29, pg. 10, ¶ 3]. TDOT and Commissioner Bright have moved the Court to dismiss Lamar's complaint on several grounds [Doc. 31]. First, they argue they are immune from suit under the Eleventh Amendment to the U.S. Constitution. Second, they argue Lamar lacks Article III standing to challenge the Billboard Act.

Since the Defendants filed their motion to dismiss, the United States Supreme Court has abrogated the Sixth Circuit's decision in *Thomas v. Bright*. *See City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC,* -- U.S. --, 142 S. Ct. 1464 (2022). In *Austin*, the Supreme Court held that strict scrutiny review does not apply to restrictions on outdoor signs even where a state must examine the content of the sign to determine compliance with a state law or regulation. *Id*. at 1468. In accordance with the *Austin* ruling, strict scrutiny no longer applies to Tennessee's content-based review of outdoor signs under the Billboard Act. TDOT and Commissioner Bright argue this case should be dismissed on the premise that *Austin* "eviscerates" Lamar's claims [Doc.

4

38]. Lamar disagrees, arguing that *Austin* does not "retroactively apply" to *Thomas* [Doc. 39, pg. 2].

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings tests the sufficiency of the complaint. The standard of review is the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). In reviewing the complaint on a motion for judgment on the pleadings, "all well-pleaded material allegations . . . must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*.

To survive a motion to dismiss (or a motion for judgment on the pleadings), the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). In considering the motion, the court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A.,* 510 F.3d at 581. "[M]ore than bare assertions of legal conclusions or personal opinions are required to satisfy federal notice pleading requirements." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

## III. ANALYSIS

**A.     Whether the Eleventh Amendment provides TDOT and Commissioner Bright immunity from suit in federal court.**

    **1.     TDOT's claim to immunity**

TDOT and Commissioner Bright argue the Eleventh Amendment bars all claims against TDOT as a state agency and bars any claims for monetary damages against Commissioner Bright [Doc. 32, pgs. 3-4]. Lamar counters that "Eleventh Amendment immunity does not automatically attach to a state subdivision," therefore "cities, municipalities, and other subdivisions of the state cannot assert Eleventh Amendment immunity." [Doc. 35, pg. 5]. Lamar reasons that, since TDOT is not a state, and since Eleventh Amendment immunity is only available to "one of the United States," TDOT and Commissioner Bright do not enjoy sovereign immunity [*Id.*].

"The Eleventh Amendment to the United States Constitution bars suits in federal court against the states or their agencies unless the state provides its consent." *Thomas v. Tennessee Dep't of Transp.*, 579 F. App'x 331, 333 (6th Cir. 2014) (*Thomas I*) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)); *see also Alabama v. Pugh,* 438 U.S. 781, 781 (1978). Lamar's complaint alleges that TDOT is "an agency of the state of Tennessee." [Doc. 29, ¶ 34]. In *Thomas I*, the Sixth Circuit specifically found that TDOT, the sole defendant named in Thomas's complaint, was "a state agency" for the purposes of analyzing Eleventh Amendment immunity. *Id*. The court affirmed the district court's dismissal of the action on immunity grounds. The court found that, because Thomas did "not suggest that the state of Tennessee consented to be sued in federal court … [t]he case … cannot proceed in this forum." *Id*.

Although Lamar's amended complaint describes TDOT as a "state agency," Lamar now characterizes TDOT as "a state subdivision," to which immunity does not automatically attach [Doc. 35, pg. 5]. Lamar does not provide any support for its new description of TDOT as a state subdivision. Instead, it simply cites *N. Ins. Co. of New York v. Chatham Cnty., Ga.,* 126 S. Ct. 1689, 1690 (2006) to argue Eleventh Amendment immunity does not automatically attach to a

6

state subdivision. But in *Chatham,* the "political subdivision" whose immunity was in question was a county, not a state agency like TDOT. *Id*. at 1692.

Lamar cites two Supreme Court cases to argue TDOT, even as a state agency, is not immune from suit. Neither of these cases helps Lamar. In the first, *Hess v. Port Authority Trans-Hudson Corporation,* 513 U.S. 30 (1994), the Supreme Court considered whether the Port Authority Trans-Hudson Corporation ("PATH"), a wholly owned subsidiary of the Port Authority of New York and New Jersey, qualified for sovereign immunity under the Eleventh Amendment. PATH owed its existence to "state and federal sovereigns acting cooperatively, and not to any 'one of the United States.'" *Id*. at 42. It therefore lacked "the tight tie to the people of one State that an instrument of a single State has[.]" *Id*. Because PATH was a "bistate entity" created by compact, it "was not subject to the unilateral control of any one of the States that compose the federal system." *Id.* Accordingly, the Supreme Court found PATH was not entitled to Eleventh Amendment immunity. By contrast, TDOT is not a bistate entity, nor was it created by Congress or any cooperative act between state or federal sovereigns. TDOT is solely an arm of the state of Tennessee. *Hess* is inapposite.

Lamar next cites *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979). In *Lake Country,* California and Nevada created the Tahoe Regional Planning Agency ("TRPA") whose prime function was the regulation of land use around Lake Tahoe, a mountain lake located partly in California and partly in Nevada. *Id.* at 393, 401. The TRPA compact between California and Nevada expressly stated that the TRPA was a "political subdivision rather than an arm of the State" for purposes of sovereign immunity analysis. *Id*. Its obligations were not "binding on either State." *Id.* at 402. By contrast, TDOT is governed by only one state, Tennessee, and Tennessee has never asserted that TDOT is anything other than an arm

7

of the state. As an agency of the state of Tennessee, TDOT is immune from suit in this Court, and Lamar's action against TDOT cannot proceed in this forum.

### 2. Commissioner Bright's claim to immunity.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police*, 491 U.S. 58, 66, 71 (1989). Such a lawsuit "is no different from a suit against the State itself." *Id.* Therefore, the Eleventh Amendment bars any money damages claim against Commissioner Bright in his official capacity as Commissioner of Transportation. *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (Eleventh amendment sovereign immunity "applies to actions against state officials sued in their official capacity for money damages."). However, a state official may be sued in his or her official capacity for prospective injunctive or declaratory relief. *Ex Parte Young*, 209 U.S. 123 (1908); *Diaz v. Michigan Department of Corrections*, 703 F.3d 956, 964 (6th Cir. 2013).

Lamar attempts to work around Bright's immunity to money damages by arguing it does not seek money damages, but only seeks "declaratory and injunctive relief" in the form of "restoration, prospective credit, or otherwise reinstatement of fees paid to TDOT through Mr. Bright, or his predecessors, as Commissioner of TDOT." [Doc. 35, pg. 4]. Lamar prays for the following relief:

> 1. A Declaratory Judgment that all fees collected under the [Billboard Act] were collected from [Lamar] under an unconstitutional act and regulations promulgated pursuant to that act, as the [Billboard Act] has been ruled unconstitutional in its entirety;
>
> 2. A Declaratory Judgment and extra ordinary relief in the form of an Order instructing Defendants to restore or prospectively credit all fees collected from and paid by [Lamar] pursuant to the unconstitutional [Billboard Act] and regulations promulgated thereunder;

8

> 3. That extra ordinary relief in the form of an Order be issued requiring that TDOT provide a complete accounting of all fees paid by Lamar, or Lamar's predecessors in interest, under the authority of the [Billboard Act].

[Doc. 29, pgs. 9-10, ¶¶ 1-3].

Paragraph 1 seeks a declaration that Lamar paid fees to TDOT under the Billboard Act, which it contends has "been ruled unconstitutional in its entirety." Paragraph 3 seeks an order requiring TDOT to provide a complete accounting of all fees Lamar has paid to it under the Billboard Act. But Paragraph 2 is a prayer for monetary damages, even though Lamar attempts to present it as a prayer for declaratory judgment and injunctive relief. Paragraph 2 seeks "an Order instructing Defendants to restore or prospectively credit all fees" paid by Lamar to TDOT under the Billboard Act. In its response to TDOT's motion, Lamar reasserts that it seeks "reimbursement, restoration, or a prospective credit of past fees paid[.]" [Doc. 35, pg. 7]. Though Lamar valiantly tries to couch this claim as a request for declaratory judgment, there simply is no way to interpret a claim for "reimbursement, restoration or a prospective credit of past fees paid" as anything but a claim for a monetary award. Commissioner Bright, in his official capacity, is immune from Lamar's claim for monetary damages.

**B.    Whether Defendants have waived their Eleventh Amendment immunity defense.**

Lamar argues that Defendants "may have already availed themselves of suit by waiver of immunity in the *Thomas* cases that preceded this litigation, and through conduct in the instant litigation." [Doc. 35, pg. 5]. Lamar asserts that TDOT instituted litigation against Thomas back in 2006 in Tennessee state court and this was the "genesis of the outcome in 2020," wherein the Sixth Circuit declared at least portions of the Billboard Act to be unconstitutional [Doc. 35, pg.

6].[2] Lamar argues that TDOT now wants to "use Eleventh Amendment immunity to escape the consequences of instituting that litigation[.]" [Doc. 35, pg. 6].

Defendants' conduct in this litigation does not indicate waiver. Lamar cites *Arizona v. Bliemeister,* 296 F.3d 858, 862 (9th Cir. 2002) to argue a state waives its sovereign immunity if it substantially participates in a litigation. In *Bliemeister*, the Ninth Circuit found Arizona waived Eleventh Amendment immunity based on its high level of participation in the bankruptcy litigation below. *Id*. at 860. Arizona had answered the plaintiff's complaint, filed for summary judgment, and argued the merits of the case at an oral hearing without ever raising a qualified immunity defense. *Id*. at 862. Arizona only asserted sovereign immunity after it heard the bankruptcy court opine as to its likely decision, which was unfavorable to Arizona. *Id*. The court found Arizona's delay in asserting immunity "was clearly a tactical decision." *Id*. By contrast, Defendants here filed an answer [Doc. 30] and the next day filed their first motion for judgment on the pleadings wherein they raised the sovereign immunity defense [Docs. 31, 32]. Unlike Arizona's actions in *Bliemeister*, Defendants have not delayed in invoking sovereign immunity but have done so early in the litigation before any discovery has taken place and before any adverse ruling from this Court. This is not the type of tactical delay that results in waiver.

Lamar also cites *Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003) to argue TDOT has waived its immunity defense. In *Ku*, similar to Arizona's actions in *Bliemeister*, Tennessee had participated much more fully in the litigation than TDOT has here. Tennessee "defended the suit on the merits, engaging in substantial discovery and filing a motion for summary judgment. It was only after a final adverse ruling by the district court that Tennessee raised the Eleventh Amendment

---

[2] As noted above, *Thomas* was abrogated by *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC,* -- U.S. --, 142 S. Ct. 1464 (2022).

immunity defense." *Ku*, 322 F.3d at 432. None of that is similar to the procedural posture of this case.

Nor is Lamar's argument persuasive that TDOT has waived its immunity defense by litigating the *Thomas* cases in state and federal court. TDOT's litigation against Thomas involved different parties and a dispute over billboard content and enforcement of the Billboard Act. Those claims do not affect Tennessee's ability to raise Eleventh Amendment immunity here. If that were the case, any adversary of a state could claim it had waived sovereign immunity simply because it had previously appeared to litigate a matter in federal court. Such a ruling would render Eleventh Amendment protection essentially impotent. TDOT has properly invoked its Eleventh Amendment immunity from all of Lamar's claims, and Commissioner Bright is immune from enforcement of any monetary judgment against him. Consequently, the only possible relief available to Lamar are its requests for (1) a declaratory judgment that the Billboard Act is unconstitutional in its entirety and as such it paid fees under an unconstitutional Act; and (2) a full accounting of all the fees it has paid under the Billboard Act.

C. **Whether Lamar lacks standing to request declaratory and injunctive relief without monetary damages.**

Defendants argue that, because they are immune from Lamar's request for monetary damages, Lamar lacks standing to maintain this action because Lamar is now left with a "pointless" prayer for declaratory judgment [Doc. 32, pg. 6]. Lamar argues that its prayer for declaratory judgment "is far from pointless [because Lamar has] petitioned this Court to declare that fees were indeed collected under color of an unconstitutional Act, that injunctive relief is appropriate, that an accounting be ordered, and that [Lamar] be given prospective relief for those fees paid." [Doc. 35, pg. 11].

"To satisfy Article III's standing requirements, a plaintiff must show: (1) [it] has suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; [and] (3) it is likely . . . that the injury will be redressed by a favorable decision." *Soehnlen v. Fleet Owners Ins. Fund,* 844 F.3d 576, 581 (6th Cir. 2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Lamar alleges it has been "injured by [Defendants] in that fees were inappropriately collected under an unconstitutional act which deprived [Lamar] of property," [Doc. 29, ¶ 48] and argues this "more than adequately" states the harm it has suffered [Doc. 35, pg. 11]. TDOT does not dispute that Lamar has adequately stated an injury in fact. The alleged injury, fees paid to TDOT, is also fairly traceable to TDOT in enforcing the Billboard Act. The question revolves around the third requirement for standing, whether Lamar's alleged injuries can be redressed by a favorable decision here. The Court finds that they cannot.

Even if the Court ultimately agreed with Lamar that the Billboard Act was unconstitutional in its entirety and Lamar paid fees to TDOT all those years under an unconstitutional Act, Lamar's alleged injury of lost fees cannot be redressed by a declaration of the same. Since TDOT and Commissioner Bright are immune from a money judgment in federal court, it would be meaningless to declare that Lamar paid fees under an unconstitutional Act. It would also be pointless for the Court to grant Lamar's request for injunctive relief in the form of a full accounting of fees paid by Lamar to TDOT. Presumably, Lamar seeks this accounting so it will know the exact dollar amount it should be reimbursed by TDOT; indeed Lamar offers no other reason for this request. If Lamar cannot receive money damages, there is no point in ordering an accounting of its past fees paid. Nor has Lamar alleged any ongoing harm that could be redressed by a

prospective declaratory judgment or injunction against TDOT or Commissioner Bright, especially since TDOT stopped enforcing the Billboard Act on November 19, 2019, including the collection of fees. In sum, Lamar has not alleged any injury that could be redressed by a favorable decision in this Court and has therefore not met its burden to show standing.

Because Lamar lacks standing to bring the remaining claims for declaratory judgment and injunctive relief against Commissioner Bright, the Court does not reach the substantive issue of the constitutionality of the Billboard Act, nor does the Court find it necessary to address Defendants' other arguments for dismissal.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings [Doc. 31] is **GRANTED.** Lamar's claims against TDOT and Commissioner Bright are hereby **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED:

s/Clifton L. Corker  
United States District Judge